UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANA M. ZAYAS,

    Plaintiff,

v.                                                      Case No: 8:16-cv-2722-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff, Ana M. Zayas, seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for disability insurance benefits on March 22, 2013. (Tr. 168–70.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 104–16.) Plaintiff then requested an administrative hearing. (Tr. 117.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 50–72.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 32–44.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–6.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

B.    **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1966, claimed disability beginning on March 12, 2013. (Tr. 75.) Plaintiff has past relevant work as a housekeeper/cleaner, retail clerk, and hand sander. (Tr. 43.) Plaintiff alleged disability due to back, spine, and shoulder pain, and being unable to walk extended lengths due to "weak legs." (Tr. 75.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since March 12, 2013, the alleged onset date. (Tr. 34.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: "(1) lumbar spine dysfunction described as minimal disc herniation at L4-5 and L5-S1, acute lumbosacral strain; (2) rheumatoid arthritis with fibromyalgia; (3) obesity; and (4) mental impairments variously described as major depressive disorder without psychotic features, depression, anxiety/generalized anxiety disorder." (Tr. 34.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 36.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with the following postural and mental limitations:

> [T]he claimant has the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds. The claimant has the unlimited capacity to push and pull up to the weight capacity for lifting and carrying. The claimant has the capacity to stand and walk 6-8 hours in an 8-hour workday and has the capacity to sit 6-8 hours in an 8-hour workday. The claimant has the capacity to frequently stoop, kneel, crouch, and crawl. The claimant has the capacity to occasionally climb stairs and ramps. The claimant has no limitations in manipulative abilities and no limitations in the ability to balance. Considering the claimant's subjective complaints of limitations in mobility, the claimant should has [sic] only occasional exposure to workplace hazards such as unprotected heights and fast moving machinery. Mentally the claimant has the capacity to understand, remember, and carry out simple, routine tasks. In so doing, the claimant has the capability to utilize

> common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. The claimant has the capacity to appropriately interact with supervisors, coworkers, and the general-public. The claimant has the capacity to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

(Tr. 38.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 39.)

When posed a hypothetical regarding whether a hypothetical claimant with Plaintiff's RFC could perform Plaintiff's past relevant work, the ALJ testified that Plaintiff could perform her past relevant as a cleaner/housekeeper, hand sander, and retail clerk. (Tr. 43.) Given the VE's testimony, the ALJ determined that Plaintiff can perform her past relevant work and found Plaintiff not disabled. (Tr. 43.)

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an

individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing

court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in evaluating certain medical opinions; (2) the Appeals Council erred in not remanding the case to the ALJ; and (3) the ALJ erred in her assessment of the Plaintiff's testimony regarding her symptoms. For the reasons that follow, these contentions do not warrant reversal.

### A. Opinion Evidence

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This standard applies equally to the opinions of treating and non-treating physicians. *McClurkin v. Soc. Sec. Admin.*, 625 Fed. App'x 960, 962 (11th Cir. 2015). Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 Fed. App'x 875, 877–78 (11th Cir. 2013).

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to

support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 Fed. App'x 892, 895 (11th Cir. 2015). The medical opinions of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179.

### 1. Dr. Delgado

#### a. October 11, 2013 Opinion

On October 11, 2013, Dr. Mariana Delgado completed a Psychiatric Impairment Questionnaire. (Tr. 408–09.) After describing Plaintiff's symptoms and the results of a mental status examination (Tr. 408), Dr. Delgado opined that Plaintiff has frequent deficiencies with concentration, persistence, and pace, which result in Plaintiff's failure to complete tasks in a timely manner. (Tr. 409.) She further found that there was insufficient evidence for her to opine about Plaintiff's episodes of decompensation. (*Id.*)

The ALJ accorded Dr. Delgado's opinion that Plaintiff has frequent losses of concentration and decompensation little weight. (Tr. 41.) The ALJ reasoned that this opinion unsupported by the evidence and found that the evidence showed instead that Plaintiff "received conservative treatment for her mental impairments, composed of medication adjustments and outpatient visits" and was not hospitalized for psychiatric treatment for any substantial period, and that treatment records showed "some degree of improvement with medication and treatment." (Tr. 41.)

As an initial matter, Plaintiff is correct that the ALJ misstated Dr. Delgado's opinion about Plaintiff's episodes of decompensation. (Dkt. 21 at 6.) While the ALJ stated that Dr. Delgado

found Plaintiff to have frequent decompensation (Tr. 41), Dr. Delgado actually stated that she had insufficient evidence to provide an opinion on this issue (Tr. 409). This factual error was harmless, however, because even if the ALJ properly stated Dr. Delgado's opinion about decompensation, the ALJ's ultimate conclusions would not change because there was no opinion to credit—Dr. Delgado did not provide an opinion about Plaintiff's episodes of decompensation because she stated there was insufficient evidence to render this opinion. (Tr. 409.) *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (concluding that the ALJ's misstatements of facts were harmless errors because they did not affect the ALJ's ultimate conclusion regarding disability).

Further, contrary to Plaintiff's argument (Dkt. 21 at 8–10), the ALJ made the appropriate considerations in evaluating Dr. Delgado's opinion and articulated good cause to accord her opinion less than substantial weight. Specifically, the ALJ found that the evidence did not bolster her opinion and, instead, supported a contrary finding. *See Winschel*, 631 F.3d at 1179. A review of the evidence cited by the ALJ demonstrates that her decision to accord Dr. Delgado's opinion less than substantial weight is supported by substantial evidence. Specifically, as the ALJ reasoned (Tr. 37, 40, 41), Dr. Delgado's treatment notes show that she treated Plaintiff's mental impairments with medication. (Tr. 382–88.) Also, the ALJ's reasoning that the "check box" opinion form was "not very expressive of what [Plaintiff] actually could do during the course of a workday" (Tr. 41), is a proper articulation of good cause to discount Dr. Delgado's opinion. *See Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1304 (S.D. Fla. 2012) (internal citation omitted) (explaining that a physician's "questionnaire warranted discounted weight because it consists entirely of fill-in-the-blank and check-box answers, and it is not accompanied by any thoroughly written report, citation to treatment notes, or substantive explanation" because "[i]n the context of disability analysis, such forms are considered 'weak evidence at best'").

Finally, to the extent Plaintiff cites evidence showing Plaintiff's issues with concentration (Dkt. 21 at 8–10), the narrowly circumscribed nature of the court's appellate review precludes the court from "re-weigh[ing] the evidence or substitut[ing] [its] judgment for that [of the Commissioner] . . . even if the evidence preponderates against" the decision. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth*, 703 F.2d at 1239). This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Also, Plaintiff cites evidence submitted to the Appeals Council that was not before the ALJ (Dkt. 21 at 9–10), but the reviewing courts "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

In sum, because the ALJ has adequately articulated good cause to accord Dr. Delgado's October 11, 2013 opinion little weight, Plaintiff's first contention does not warrant reversal.

    **b.**  **May 30, 2014 Opinion**

Next, Plaintiff argues that the ALJ erred by not addressing Dr. Delgado's May 30, 2014 opinion in her decision. (Dkt. 21 at 6–7.) In response, Defendant concedes that the decision does not address Dr. Delgado's May 30, 2014 opinion but argues that this "error was harmless because the ALJ demonstrated in her Step 3 (listings) and RFC analyses that the record evidence as a whole does not support finding Plaintiff as limited as Dr. Delgado indicated in her May 30, 2014 questionnaire responses." (Dkt. 24 at 8.)

On May 30, 2014, Dr. Delgado completed a Mental Impairment Questionnaire. (Tr. 416–19.) In her opinion, Dr. Delgado explained that she treats Plaintiff every one to two months for "medication management." (Tr. 416.) Dr. Delgado described Plaintiff's symptoms (Tr. 417), and

explained that Plaintiff's depressive symptoms exacerbate her experience of pain and that Plaintiff "tends to be very pessimistic [and] negative with regard to her prognosis." (Tr. 418.) She found her restriction of activities of daily living marked, her difficulties in maintaining social functioning and deficiencies in concentration, persistence, or pace to be extreme, and that Plaintiff has had four or more episodes of decompensation. (Tr. 418.) Further, Dr. Delgado opined that Plaintiff in completely unable "to function independently" outside her home and "is completely disabled at this time." (Tr. 419.)

The ALJ's failure to specify the weight afforded to Dr. Delgado May 2014 opinion was error. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). This error warrants reversal unless it was a harmless error, meaning that it did not "affect the administrative law judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' opinions was harmless error); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

First, it should be noted that Dr. Delgado's opinions that Plaintiff is completely unable to function and is "completely disabled" (Tr. 419), are not medical opinions entitled to deference but instead are opinions on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d) (explaining that opinions on issues reserved to the Commissioner "are not medical opinions" and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that" the claimant will be determined to be disabled).

The following opinions remain: Plaintiff has marked restrictions with activities of daily living; Plaintiff has extreme difficulties maintaining social functioning; Plaintiff has extreme deficiencies of concentration, persistence, or pace; and Plaintiff has had four or more episodes of decompensation. (Tr. 418.) The ALJ evaluated these limitations at step three of the sequential process. (Tr. 37–38.) She determined that evidence of Plaintiff's abilities to dress, bathe, feed, and care for herself and attend appointments with physicians supported a finding that Plaintiff has no restrictions in activities of daily living. (Tr. 37.) She further found that Plaintiff has mild difficulties with social functioning and moderate difficulties with concentration, persistence, or pace based on her interactions with physicians in treatment notes. (*Id.*) Finally, the ALJ determined that there was no evidence that Plaintiff had experienced episodes of decompensation. (Tr. 38.) The ALJ's reasoning at step three is supported by substantial evidence. *Hunter*, 609 F. App'x at 558 (concluding that the ALJ's failure to accord weight to treating physicians' opinions was harmless because "[s]ubstantial evidence supports the administrative law judge's conclusion that [claimant] was not under a disability, as the medical records and expert testimony demonstrated that, despite his medical conditions, [claimant] was still capable of performing his past relevant work").

Importantly, Plaintiff has made no argument as to how adoption of Dr. Delgado's May 2014 opinions would change the outcome of this case. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (concluding that the Appeals Council "was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a survey, with no supporting explanations"); *Chaney-Everett*, 839 F. Supp. 2d at 1304 (concluding that the physician's questionnaire "warranted discounted weight because it consists entirely of fill-in-the-blank and check-box answers, and it is not accompanied by any thoroughly written report, citation to treatment notes, or substantive explanation"). For these reasons, Plaintiff's second contention does not warrant reversal.

### 2. Dr. Patel

Plaintiff next argues that the ALJ erred in according little weight to neurologist Dr. Harish Patel's opinion that Plaintiff has limitations stemming from lacunar infarctions. (Dkt. 21 at 12–13.) On September 29, 2014, Dr. Patel completed a medical certification form for the Department of Homeland Security, U.S. Citizenship and Immigration Services, to support Plaintiff's request for an exception to the English language or civics requirements, it appears as part of an application for residency or citizenship, due to physical or developmental disability. (Tr. 534–39.) Relevant to this appeal, Dr. Patel stated that he has treated Plaintiff since September 2013 and that Plaintiff has lacunar infarcts. (Tr. 535.) While it was unknown to Dr. Patel how Plaintiff developed lacunar infarcts, he stated that their presence "has been confirmed with MRI scans." (Tr. 536.) Dr. Patel explained that Plaintiff's lacunar infarcts have caused her "to permanently have severe memory loss, dizziness, and severe headaches" making her "unable to process any new information or learn any new language," and thus "not able to answer questions regarding United States history and civics, even in [Plaintiff's] native language." (Tr. 537.)

The ALJ accorded Dr. Patel's opinion little weight, reasoning that the evidence does not "objectively verify such a condition [lacunar infarcts] was present during the period at issue in this case." (Tr. 42.) This is the same reason the ALJ concluded, at step two of the sequential process, that Plaintiff's lacunar infarctions were not "medically determined" such that they constitute a severe medically determinable impairment. (Tr. 35) (citing Dr. Patel's opinion and concluding that Plaintiff's "lacunar infarctions were not objectively confirmed by the evidence"). Further, the ALJ discredited Dr. Patel's opinion because evidence showed that her treatment for lacunar infarctions was conservative. (Tr. 42.) The ALJ adequately articulated good cause to discredit Dr. Patel's opinion, namely that the evidence did not support his opinion. *See Winschel*, 631 F.3d at 1179. Further, the MRI studies Plaintiff argues supports Dr. Patel's opinion (Dkt. 21 at 13), were not part of the record before the ALJ but were submitted to the Appeals Council. (Tr. 5, 48.) Again, reviewing courts "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge*, 150 F.3d at 1323. Accordingly, Plaintiff's contentions regarding Dr. Patel's opinion do not warrant reversal.

### 3. Dr. Perez-Arce

On May 2, 2013, Dr. Jose Perez-Arce examined Plaintiff and prepared an opinion on referral from the Office of Disability Determinations. (Tr. 323–30.) Plaintiff reported a history of pain in her legs and recent pain in her elbows, shoulders, and neck. (Tr. 323.) Dr. Perez-Arce noted that, on examination, Plaintiff was "tender" in "14 of 18 fibromyalgia points." (Tr. 327.) She was unable to walk "toe and heel" or squat due to reported pain in her legs. (*Id.*) Physically, Dr. Perez-Arce concluded that Plaintiff possibly suffers from "severe fibromyalgia" but recommended that a "full medical evaluation is needed first." (*Id.*) Further, he opined that Plaintiff is "[u]nable to work in current condition." (*Id.*) Psychologically, Dr. Perez-Arce concluded that,

due to Plaintiff's history of depression, headaches, and insomnia, a psychiatric evaluation was necessary. (*Id.*)

The ALJ accorded this opinion little weight. (Tr. 42.) The ALJ provided the following reasoning for discrediting Dr. Perez-Arce's opinion: (1) the opinion was based on Plaintiff's subjective complaints; (2) Dr. Perez-Arce examined Plaintiff only once; (3) Dr. Perez-Arce's opinion that Plaintiff is unable to work is not an opinion but a decision reserved to the Commissioner; and (4) Dr. Perez-Arce's opinion about Plaintiff's need for a psychiatric evaluation was contradicted by evidence that Plaintiff had conservative treatment and had no extended psychiatric hospitalization or other episodes of decompensation. (*Id.*)

The ALJ properly evaluated Dr. Perez-Arce's opinion. First, as noted by the ALJ (Tr. 42), Dr. Perez-Arce was a consultative examiner and, as such, his opinions are not entitled to the deference normally given treating sources. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford*, 363 F.3d at 1160–61 ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."). Second, Dr. Perez-Arce's opinion that Plaintiff is unable to work is not a medical opinion but an opinion on an issue "reserved to the Commissioner," and therefore is not entitled to any special significance. 20 C.F.R. § 404.1527(d)(1). Thus, ALJ sufficiently stated the bases for affording Dr. Perez-Arce's opinion little weight. *See Winschel*, 631 F.3d at 1179.

Plaintiff challenges the ALJ's finding that Dr. Perez-Arce's opinion was based on Plaintiff's subjective complaints by pointing to Dr. Perez-Arce's findings that Plaintiff had fourteen out of eighteen tender points for fibromyalgia, was unable to squat and heel and toe walk,

had only 4/5 grip strength in her right hand, and had limited range of motion. (Dkt. 21 at 13–14.) However, with the exception of his finding regarding Plaintiff's grip strength, all of these findings are based on Plaintiff's reports of pain. Specifically, Dr. Perez-Arce noted that Plaintiff's range of motion was "limited due to pain" (Tr. 328–30), Plaintiff was unable to heel toe walk and squat "due to pain in legs" (Tr. 330), and Plaintiff's fibromyalgia tenderness points test was based on Plaintiff reports of pain and tenderness (Tr. 327).

And, importantly, discrediting an opinion based primarily on a claimant's subjective complaints is not erroneous. *See Hoffman v. Astrue*, 259 F. App'x 213, 218 (11th Cir. 2007) (finding the ALJ's discrediting medical opinions proper because the opinions were based on Plaintiff's subjective complaints as to her mental impairments and were inconsistent with the record); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (affirming an ALJ's giving less weight to a treating physician's opinions where the opinions were "based on [claimant's] subjective complaints" of symptoms of mental and psychological impairments); *Soroka v. Astrue*, No. 8:08-CV-1423-T-TBM, 2009 WL 2424563, at *5 (M.D. Fla. Aug. 5, 2009) (affirming the ALJ's discrediting a physician's opinions in part because the opinions relied "'quite heavily'" on the subjective complaints of the Plaintiff"). For these reasons, the ALJ was not required to afford significant weight to Dr. Perez-Arce's opinion, and the ALJ properly explained her reasoning for according it little weight.

### B. Appeals Council

If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821 (11th Cir. 2015); 20 C.F.R. § 404.970(b). New evidence must not be cumulative of other evidence in the record. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986);

*Beavers*, 601 F. App'x at 823 (holding that the Appeals Council did not err in its review of new evidence because "[t]he new evidence is either cumulative of, or consistent with, the evidence that was before the ALJ"). The new evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Chronologically relevant evidence is evidence that relates to the period on or before the date of the ALJ's hearing decision. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (citing 20 C.F.R. § 404.970(b)).

The Appeals Council must grant a petition for review if it finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (internal quotations omitted). The Appeals Council is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783–85 (11th Cir. 2014) (explaining that the Appeals Council, when denying a request for review, is not required "to give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision"). Rather, in denying review, it is sufficient for the Appeals Council to simply state that it considered the additional evidence but that the information did not provide a basis for changing the ALJ's decision. *Id.* at 782. This explanation is sufficient when the record does not provide a "basis for doubting the Appeals Council's statement that it considered [the claimant's] additional evidence." *Id.* at 783–84.

The Appeals Council denied Plaintiff's request for review, reasoning as follows: "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence

currently of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2.) This explanation was sufficient. *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (explaining the Eleventh Circuit's holding in *Mitchell*, 771 F.3d 780, "that the Appeals Council is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review" and that the statement that "it had considered the additional evidence but 'the information did not provide a basis for changing the ALJ's decision'" was sufficient).

The question, then, is "whether [Plaintiff's] new evidence renders the denial of benefits erroneous." *Id.* at 936 (internal quotation omitted). Plaintiff argues that the Appeals Council erred in failing to remand to the ALJ for further proceedings in light of the following evidence presented to the Appeals Council: (1) September 2014 MRI results finding lacunar cerebral infarcts and temporal infarcts (Tr. 594); (2) a December 2014 nerve conduction study showing cervical radiculopathy (Tr. 590); (3) September 2014 records showing Plaintiff's hospitalization for an attempted suicide during which Plaintiff was diagnosed with major depressive order with psychotic features (Tr. 543–44); and (4) October 2014 treatment notes in which Plaintiff reported experiencing auditory hallucinations, feeling fearful and paranoid, and having episodes of agitation and aggression towards family members (Tr. 571). (Dkt. 21 at 15–17.) This evidence was before the Appeals Council but not before the ALJ. (Tr. 6, 49.)

First, Plaintiff argues that the September 2014 MRI results provides the objective medical evidence that was missing to support Dr. Patel's opinion. (Dkt. 21 at 15.) As Defendant argues, however, (Dkt. 24 at 14), "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213, n.6. Importantly, while Dr. Patel opined that Plaintiff's lacunar infarcts caused

severe memory loss, dizziness, and headaches, Plaintiff has not shown how Plaintiff's RFC would be more restricted than the limitations the ALJ found in her RFC assessment. Next, Plaintiff's September 2014 hospitalization records for a suicide attempt (Tr. 543–44) and follow-up treatment in October 2014 (Tr. 571), is cumulative of the other evidence of Plaintiff's psychiatric impairments reviewed and discussed by the ALJ, including Plaintiff's prior suicide attempt (Tr. 383). (Tr. 37–38, 40) (discussing the limitations caused by Plaintiff's psychiatric impairments.) Finally, the December 2014 nerve conduction study (Tr. 590), does not "relate[] to the period on or before the date of the hearing decision," because it is dated after the ALJ's November 14, 2017 decision. Accordingly, Plaintiff's contention regarding the Appeals Council does not warrant reversal.

### C. Credibility Assessment

When determining whether a claimant is disabled, in addition to objective record evidence, the ALJ must consider the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. To evaluate whether a claimant has established disability through the claimant's testimony of pain and other subjective symptoms, the ALJ must apply the following test: first, whether there is evidence of an underlying medical condition and, second, whether there is objective medical evidence substantiating the severity of the pain from the condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 404.1529.

If an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's

capacity to work. 20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776–77 (11th Cir. 2010). The ALJ considers all available evidence, including objective medical evidence, statements from the claimant, treating physicians, and non-treating physicians, and medical opinions. 20 C.F.R. § 404.1529(c)(1)–(2). In addition to objective medical evidence, the ALJ considers other information claimant provides, such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant took to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; and (6) any measures the claimant personally used to relieve pain or other symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff's final argument on appeal is that the ALJ's citing Plaintiff's conservative treatment for her fibromyalgia was not a proper basis to discredit Plaintiff's pain testimony because more aggressive treatment is not available for fibromyalgia. (Dkt. 21 at 17–18.) While an ALJ's adverse credibility determination should be reversed when lack of objective evidence is the sole basis for discrediting a fibromyalgia claimant's testimony, reversal is not warranted when the ALJ articulates other reasons for discrediting the claimant's testimony. *Moore*, 405 F.3d at 1212 (affirming the ALJ's credibility determination when the ALJ cited inconsistencies between the testimony and claimant's daily activities in addition to the lack of objective evidence).

On review of the ALJ's decision, the ALJ evaluated Plaintiff's testimony regarding her inability to stand, walk, or sit for longer than short periods, her headaches, her difficulties interacting with others and remembering simple instructions. (Tr. 39.) While the ALJ noted that Plaintiff's fibromyalgia treatment was "generally conservative" (Tr. 37, 39, 43), the opinion and medical evidence showed less profound limitations than the physical limitations she alleged (Tr.

39–40), and the psychiatric evidence showed that Plaintiff is capable of performing simple, routine tasks (Tr. 40–42).  Therefore, the ALJ did not discredit Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her pain based solely on the lack of objective evidence corroborating her fibromyalgia.  As such, there is no basis for reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on January 26, 2018.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record